UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CONNIE EARNSHAW, | ) | No. ED CV 07-01296-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly addressed the statement of lay witness Tana Earnshaw;
2. Whether the ALJ properly determined Plaintiff's hand limitations;
3. Whether the ALJ properly considered the opinion of Dr. David Wood;
4. Whether the ALJ properly considered the testimony of Plaintiff;
5. Whether the ALJ's mental limitation findings are supported by substantial evidence;
6. Whether Plaintiff is disabled based upon the vocational evidence; and
7. Whether new and material evidence supports remand.

**I**

**INTRODUCTION**

Following an initial hearing before an ALJ on April 13, 2005 (AR 747-784), an unfavorable decision issued. (AR 61-69.) The Appeals Council remanded for further proceedings (AR 50-51) to require, on remand, the following:

- Provide Plaintiff the opportunity to submit additional evidence relative to the period ending with her Date Last Insured ("DLI") (December 31, 2003);
- Obtain evidence from the medical expert ("ME") as to Plaintiff's impairments, particularly any manipulative limitations;
- Address all relevant lay statements and testimony and

1            medical opinion evidence of record;
2    •    If warranted by the expanded record, obtain supplemental
3            evidence from a vocational expert ("VE").
4 (AR 50-51.)

6     A second hearing was held before the same ALJ. (AR 785-804.)
7 Thereafter, an unfavorable decision issued. (AR 17-27.)  The Appeals
8 Council denied review, and this action ensued.
9     For the following reasons, the Court determines that the decision
10 will be affirmed, and the matter will be dismissed with prejudice.

**II**

**THE ALJ PROPERLY DETERMINED PLAINTIFF'S HAND LIMITATIONS**

14     In her second issue, briefed by the parties at JS 6-11, Plaintiff
15 asserts that the ALJ committed error in determining her residual
16 functional capacity ("RFC") with regard to her grasping and gripping
17 limitations.  Indeed, following his decision, the ALJ issued findings
18 of fact and conclusions of law, and concluded that, "[Plaintiff]
19 should avoid repeated, forceful grasping with the hands and cannot use
20 vibrating tools.  She can occasionally feel and finger." (AR 22,
21 Finding 5.)

22     The ALJ's RFC comports with that of the non-examining, testifying
23 ME, who concluded that in her upper extremities, Plaintiff could not
24 do "repeated forceful lifting or grasping with either hand again, but
25 those are probably within the weight limits I have already given – –"
26 (AR 791), and that feeling and fingering should be occasional and not
27 frequent. (Id.)
28     Plaintiff asserts that the RFC finding was erroneous because it

was inconsistent with the conclusions of examining physician Dr. Walker, who indicated, in a lengthy report dated December 30, 1997 (AR 550-596), prepared after referral by an insurance company, that Plaintiff's work restrictions included the following:

> "1. No forceful strength activities and repetitive manipulations bilaterally.
> 2. No repetitive gripping bilaterally.
> 3. No heavy lifting bilaterally."

(AR 595.)

Plaintiff urges that there is a fundamental contradiction between the ALJ's findings and those of Dr. Walker; to wit, that the ALJ precluded repeated forceful grasping, while Dr. Walker precluded any repetitive gripping bilaterally. (See JS at 7.)

Initially, the Court notes that the ALJ used the term "grasping," while Dr. Walker used the term "gripping." The American Medical Association Encyclopedia of Medicine defines the term, "grip" as follows:

> "The hand can perform two basic grips: grasping, which is a strength hold that involves the whole hand, and pinching, a precision hold using the thumb and a finger. Both grips are controlled by a combination of long muscles in the forearm and short muscles in the hand itself.
>
> Gripping ability can be reduced by any condition that causes muscular weakness or impairment of sensation in the palms or fingers..."

(Id. at p. 498, 1989 edition.)

Thus, grasping is a strength hold which is a type of gripping.

4

In this light, if one carefully examines Dr. Walker's work restrictions, it is noted that he precludes forceful strength activities and repetitive manipulations bilaterally. The restriction defined by the word "forceful" modifies both the strength activities and repetitive manipulations. In that light, restriction number 2, which states, "No repetitive gripping bilaterally," cannot reasonably be read as being unrelated to strength capacity. Here, the ME's testimony restricting repeated forceful lifting or grasping was specifically defined in his testimony as, "with the weight limits that I have already given..." (AR 791.) Those weight limits were an ability to lift and/or carry 10 pounds frequently and 20 pounds occasionally. A reasonable interpretation of Dr. Walker's conclusion would be a limitation of repetitive gripping bilaterally within those strength restrictions. Gripping is a forceful strength activity consistent with the first enumerated work restriction in Dr. Walker's report. Plaintiff's interpretation of Dr. Walker's conclusions isolates the second enumerated restriction; however, since gripping is defined in conjunction with strength and force limitations, Dr. Walker's conclusions must be interpreted as a whole.

These restrictions are consistent with the hypothetical question posed by the ALJ to the VE, which limited "any repetitive lifting or grasping higher than the weight limits that I have given you on an occasional basis." (AR 794.) Indeed, based on this total hypothetical question, which incorporated these restrictions, the VE identified an available occupation at Step Five of the sequential evaluation process.

Based on the foregoing analysis, the Court in fact finds no contradiction or inconsistency between the ME's findings and

testimony, the ALJ's assessment, and the conclusions of Dr. Walker. This is not a case in which the ALJ relied on the opinion of a non-examining ME which was unsupported by any independent clinical evidence. Plaintiff's definition of grasping as a form of handling (see JS at 10) misapprehends the fact that any gripping, which includes grasping, of necessity includes a limitation or restriction as to force. Thus, Plaintiff's contrast between "forceful" grasping and what she terms "just regular garden variety grasping" (JS at 11) appears to reflect a misapprehension of this term. Since Plaintiff has not asserted any error in the strength limitations found by the ALJ in Finding 5 of his Decision, the issue raised by Plaintiff does not have merit.

In a related issue, Plaintiff asserts that the ALJ failed to properly address the medical opinion of treating physician Dr. David Wood. (Issue 3, JS at 12-16.) Plaintiff asserts that the ALJ failed to address that portion of Dr. Wood's opinion which restricts Plaintiff from "repetitive gripping and grasping, as well as fine manipulative motions, and keyboarding other than on an occasional basis." (JS at 12, citing AR at 446.) Essentially, Plaintiff again contends that Dr. Wood's opinion should be strictly interpreted as prohibiting any repetitive gripping and grasping. The Court concludes, however, as with Issue No. 2, that this is an unreasonable medical interpretation of Dr. Wood's statement, in view of the fact that gripping and grasping are both strength activities, and are meaningless without some correlation to strength ability. Plaintiff isolates Dr. Walker's second enumerated finding ("No repetitive gripping bilaterally"), and ignores the first enumerated finding ("No forceful strength activities and repetitive manipulations

6

bilaterally"). There is simply no way to reconcile Dr. Walker's limitation to no forceful repetitive manipulations bilaterally with a restriction from any repetitive gripping bilaterally unless the modifier "forceful" is included in the gripping limitation. Similarly, it would be unreasonable to interpret Dr. Wood's limitation from repetitive gripping and grasping as excluding any reference to strength ability. Again, Plaintiff conflates limitations on gripping and grasping activities with limitations on fine motor manipulations. ("Based upon the opinion of Dr. Wood, [Plaintiff] should be limited to only occasional use of her hands." [JS at 12.]) The ALJ got it right in the hypothetical question to the VE which limited this particular ability as follows: "Feeling and fingering is occasional but not frequent with both extremities..." (AR at 794.) Clearly, fingering and manipulative abilities are not strength activities; gripping and grasping are.

For this reason, it is clear that the ALJ did consider Dr. Wood's opinion, along with the opinions of other examining physicians, and that of the ME, in making his RFC determination, which the Court has already determined to be correct. There is no error with regard to the third issue.

**III**

**THE ALJ PROPERLY CONSIDERED PLAINTIFF'S CREDIBILITY**

Plaintiff's fourth enumerated issue is that the ALJ did not properly consider Plaintiff's subjective testimony as to her limitations. (JS at 16-21.) In particular, Plaintiff cites her testimony at the hearing that she had horrible headaches, cramping in her hands, that her hands would lock up, that she had severe hand

7

pain, back and knee pain that causes her knee to give out, pain in her shoulders and elbows, an inability to sleep well, that she is only able to sit 30 to 45 minutes at a time, stand 45 to 60 minutes at time, and lift 10 to 15 pounds. (AR 756-776.)

The ALJ depreciated Plaintiff's credibility because the intensity, persistence and limiting effects of her symptoms, as described, exceed the objective findings and are inconsistent with her activities of daily living ("ADL"). Plaintiff asserts that these are insufficient reasons, citing well-recognized Ninth Circuit cases on credibility assessment in Social Security matters.

It is well established that once a claimant has established that there is an underlying medical impairment which could be reasonably be expected to produce some subjective symptoms, the ALJ must provide specific, clear and convincing reasons to reject these subjective disabling symptoms. (See JS at 17-18, citing Thomas v. Barnhart, 278 F.3d 947, 959-960 (9th Cir. 2002).) In addition, regulations which must be adhered to by the Commissioner cite specific factors to be utilized in credibility assessment. See 20 C.F.R. §404.1529 (2007). These factors include, in part: ADL's, and ordinary techniques of credibility evaluation. (See Id., and Bunnell v. Sullivan, 947 F.2d 341, 346-347 (9th Cir. 1991)(en banc.).)

In the second decision, the ALJ incorporated findings and conclusions made in the prior decision of June 18, 2005, which included credibility assessment issues. The prior decision addressed specific inconsistencies between medical evidence in the record and Plaintiff's complaints. For example, the ALJ noted that Plaintiff had complained of problems with her wrist, but that her orthopedic notes indicate that her wrist fracture had satisfactorily healed. (AR at

8

67.) Similarly, he noted that Plaintiff testified to having prickly sensations, but there is no medical evidence of neuropathy or radiculopathy. (Id.)  Plaintiff had testified to hallucinating, but failed to report any hallucinations in her 2003 initial assessment. (Id.)  Further, Plaintiff testified to balance problems and falling several times a year, but, as the ALJ noted, there was no objective evidence to establish a medical need for any assistive devices for ambulation. (Id.)

With regard to ADLs, both decisions reflect Plaintiff's admission that she takes periodic trips to Laughlin, Nevada, about a four-hour drive away.  This clearly contradicts her contention that she is only able to sit for 30 to 45 minutes at a time.  In addition, although she testified that she cannot walk ten minutes to the market (AR 777), she conceded that she can walk her dog when she feels well enough, can do light cleaning, laundry, and exercise at the gym. (AR at 23, citing Exertional Daily Activities Questionnaire, at 137, and Psychiatric Consultation Request, AR at 340.)

All of the above constitute discrepancies and inconsistencies of which the ALJ took note.  As such, the ALJ properly discharged his duty to determine credibility and to resolve any conflicts in testimony and evidence in order to make that determination.  See Sample v. Schweiker, 649 F.2d 639, 642 (9th Cir. 1982).

For the foregoing reasons, Plaintiff's fourth issue has no merit.

**IV**

**THE ALJ PROPERLY CONSIDERED THE STATEMENT**

**OF LAY WITNESS TANA EARNSHAW**

In her first enumerated issue, Plaintiff asserts that the ALJ

9

failed to properly consider the lay testimony of Tana Earnshaw, Plaintiff's sister-in-law. (JS at 3-6.)  In particular, Plaintiff asserts that on remand, the Appeals Council ordered the ALJ to consider this testimony, which was not addressed in the first opinion. (JS at 3, citing AR at 50.)

Plaintiff's argument fails for two principal reasons.  First, Tana Earnshaw does not appear to have significant percipient knowledge of Plaintiff's functional abilities.  Second, to the extent that she rendered an opinion, it largely discounted many of Plaintiff's claims as to her functional limitations.

As to the first reason, Ms. Earnshaw conceded that she does not live with Plaintiff.  Further, in response to the specific question as to how much time she spends with Plaintiff and what they do together, Tana Earnshaw responded, "Not enough, talk, have lunch." (AR 122.)

With regard to the second reason noted by the Court, Tana Earnshaw opined that Plaintiff is able to care for her husband and pet, cook meals two or three times a week, do light cleaning and laundry, drive, go to the grocery store one or two times a week, attend doctors' appointments, and handle finances. (AR at 123-127.) Certainly, this is inconsistent with the extent of limitations described by Plaintiff in her own testimony, and for this reason, the Court fails to appreciate why Plaintiff seems to think that Tana Earnshaw's testimony would have contributed to a finding of disability.  While the ALJ did not specifically mention Tana Earnshaw's comments in his second decision, the fact that the Appeals Council ordered the ALJ to address all "relevant" lay statements and testimony is not inconsistent with the omission of any reference to Tana Earnshaw in the second opinion.  The key word is "relevant."  The

1  Court does not find anything which Tana Earnshaw said to be relevant
2  to a finding of disability.  It is not the ALJ's responsibility, as a
3  matter of law, to discuss or analyze every piece of evidence in the
4  record.  His responsibility is to address relevant evidence which is
5  material to a disability finding.  See Howard v. Barnhart, 341 F.3d
6  1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th
7  Cir. 1984).  The Court agrees with the Commissioner's contention that
8  any failure to mention Tana Earnshaw's statements was harmless error.
9  See JS at 5, citing Stout v. Commissioner of Social Security
10 Administration, 454 F.3d 1050, 1053-1056 (9th Cir. 2006.)

   For the foregoing reasons, the Court finds no error as to Issue
   No. 1.

**V**

**THE ALJ DID NOT ERR IN ASSESSING**

**PLAINTIFF'S MENTAL FUNCTIONAL CAPACITY**

   Plaintiff asserts that the ALJ erred by not finding that Plaintiff is limited to only simple repetitive tasks ("SRT"). (JS at 21-27.)

   In the initial decision, the following conclusions with regard to Plaintiff's mental limitations are made by the ALJ:

> "With respect to [Plaintiff's] mental limitations, the [ALJ] accepts the November 19, 2003 conclusions of State Agency reviewing psychiatrist Dr. Henry Amado, because they are based on a thorough and considered review of the record as of that date, shortly before [Plaintiff's] date last insured.  Dr. Amado's Psychiatric Review Technique form indicates: only mild limitations in activities of daily

> living; only mild difficulties in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Dr. Amado found that [Plaintiff] had moderate limitations in only 5 out of 20 mental functional areas, with no significant limitations in the remaining areas. Dr. Amado concluded that, based on the record reviewed, [Plaintiff's] mental impairments would not preclude her ability to carry out sustained unskilled work at a minimum, and while she may have moderate difficulties understanding complex or detailed work, she is otherwise cognitively intact and possesses sufficient social and communicative skills to get along with potential coworkers and supervisors. [Exhibits omitted.]"

(AR 66.)

These conclusions were reiterated in the subsequent decision. (AR 23.) There is no indication that any new evidence was presented regarding mental impairment.

**A. Analysis**.

Plaintiff's principal argument that she is limited to SRT is based upon her interpretation of the conclusions set forth in the State Agency mental functioning form. (JS at 21, citing AR at 341-344.) This is not an accurate reading of Dr. Amado's conclusions. In particular, he wrote that Plaintiff's mental impairments "would no preclude the ability to carry out sustained unskilled work, at a minimum." (AR at 344.) This is certainly not an assessment that

12

Plaintiff is <u>limited to</u> SRT.

### B. **Plaintiff's Citation to Two General Assessment Of Functioning ("GAF") Scores**.

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (<u>See</u> 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (<u>See</u> Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders, Text Revision</u> 33 (4th Ed. 2000).

Finally, the Court notes that in accordance with applicable law and regulations, the hypothetical question posed to the VE concerning Plaintiff's mental limitations accurately set forth the limitations which were found to exist in the key areas required to be included in the hypothetical question. (AR 797-798.)

For the foregoing reasons, Plaintiff's fifth issue has no merit.

### VI

### **THE ALJ PROPERLY CONSIDERED THE VOCATIONAL EVIDENCE**

Plaintiff asserts that the ALJ's hypothetical to the VE was inadequate because it failed to incorporate Plaintiff's hand limitations and her ability to perform only SRT. The Court has already addressed both of these issues, and has found them to be

without merit.

Plaintiff further argues that because the ALJ only identified one occupation ("receptionist"), he failed to identify a sufficient number of occupations at Step Five of the sequential evaluation process.

Plaintiff makes the novel contention that the Ninth Circuit specifically requires identification of more than one occupation at Step Five of the evaluation, and cites <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111 (9th Cir. 2006) for this proposition.  The Court can find no such holding in <u>Lounsburry</u>, and in fact, the VE identified that there were 90,000 receptionist jobs available in California, and over 800,000 nationally. (AR 795.)  These numbers dwarf the 1,266 jobs found sufficient by the Ninth Circuit in <u>Barker v. Secretary of HHS</u>, 882 F.2d 1474, 1479 (9th Cir. 1989).

Plaintiff's sixth issue, therefore, has no merit.

## VII

### NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

### DOES NOT SUPPORT REMAND

Following the second hearing, Plaintiff's counsel filed a brief to the Appeals Council requesting review of the hearing decision, and also attached additional medical evidence. (AR 716-746.)  This evidence consists of a fibromyalgia questionnaire complete by Dr. Osmani, dated September 13, 2006 (AR 726-731).[1]

Plaintiff's counsel also provided to the Appeals Council a seven-

---

[1] Neither Plaintiff or the Commissioner provide an AR reference to this additional evidence.  The Court has found and reviewed the evidence in the transcript and has cited it in this decision.  This form of inadequate briefing should be assiduously avoided by attorneys.

14

line letter, unaddressed to any individual or entity, dated September 12, 2006, from Dr. Paladugu of the Inland Psychiatric Medical Group, Inc. (AR 731-A.)

The Appeals Council declined to disturb the ALJ's decision on review, but did consider these documents and found that, "these opinions are not supported by significant new clinical findings which can be related to the period ending December 31, 2003, when you were last insured for disability purposes. Moreover, these opinions are inconsistent with more persuasive evidence, as cited by the Administrative Law Judge." (AR 7-8.)

The Court agrees that there is no basis to disturb the decision or to send this case back for remand based on this new evidence. First, although Dr. Osmani indicates in the questionnaire that he has treated Plaintiff as of December 2003 (AR 726), neither the information on the questionnaire, or his letter of February 24, 2005, asserting that Plaintiff is permanently disabled, competently relate to the period before the DLI. As to Dr. Paladugu's letter, although he indicates that Plaintiff has been treated by him since May 16, 2003, before the DLI, his brief note is completely unsupported by any competent clinical evidence that would relate his diagnostic opinion to a date prior to the DLI. As such, the Appeals Council was correct in rejecting this evidence as not probative because it could not be related to the period which concluded as of December 31, 2003.

Plaintiff's seventh issue, therefore, has no merit.

//
//
//
//

15

For the foregoing reasons, the decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: June 9, 2008                    /s/
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE